E-FILED
Tuesday, 21 November, 2006 09:38:51 AM
Clerk, U.S. District Court, ILCD

FILED
NOV 20 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

United States District Court
For The Central District Of Illinois
Peoria Division

| | |
|---|---|
| Keven L. Carter, #R25659,<br><br>Plaintiff,<br><br>-VS-<br><br>Erika R. Howard, Clifford Vella, Jennifer Melvin, and Roger E. Walker, Jr.,<br><br>Defendant's. | Case No. 04-1157 |

## Plaintiff's Local Rule 56.1(b)(3) Response

Now comes the Plaintiff, Keven Carter, appearing Pro Se, pursuant to Rule 56 of the Federal Rules of Civil Procedure and CDIL-LR-7.1. hereby respectfully moves this Honorable Court to deny summary judgment in this matter.

In support he states:

1. Plaintiff is an inmate currently incarcerated at Pinckneyville Correctional Center. The Plaintiff Admit this.

2. Plaintiff filed his complaint pursuant to 42 U.S.C. §1983 alleging a violation of his First Amend-

ment claim to free exercise of his religion. The Plaintiff also contends he filed an Due Process claim which was summarily dismissed by the Court.

3. Restrictions that infringe upon an inmate's exercise of religion will be held if they are "reasonably related to legitimate penological interests." The Plaintiff has no knowledge to this due to not getting adequate law library priveledges.

4. Inmates retain those First Amendment rights "consistent with prison discipline" Ustrak v. Fairman 781 F.2d 573, 580 (7th Cir. 1986) The Plaintiff has no knowledge to this due to not getting adequate law library priveledges.

5. While at Pontiac Correctional Center, Plaintiff was assigned to disciplinary segregation for disciplinary reasons. The Plaintiff was wrongfully convicted of refusing housing, disobeying an direct order, violation of rules, and insolence on Jan. 1, + 8, 2004. This violates "Wolff v. McDonnell".

6. While in disciplinary segregation from December 26, 2003 to May 26, 2004, Plaintiff was not permitted to attend communal religious services. The Plaintiff admit this.

7. Inmates in disciplinary segregation status at Pontiac Correctional Center have been placed there for disciplinary reasons, which include

-2-

engaging in behaviors such as assault, fighting, sexual misconduct, possession of contraband, and threats and intimidation. <u>The Plaintiff however states he wasn't found guilty of any of these charges.</u>

8. For security reasons, inmates in disciplinary segregation are not allowed to engage in communal activities, as staff cannot ensure the safety and protection of other staff members and of inmates with disciplinary issues are allowed to congregate with other inmates. <u>The Plaintiff denies this statement because staff and security can be arranged to accomodate sex offenders to attend communal activities such as religious services. They only want to justify their denial by claiming security reasons. Through proper examination of each witness, the Plaintiff can prove this but the Court refuses him counsel and expects an indigent Plaintiff to pay up front the costs of deposing an witnesses.</u>

9. Communal activities, including religious services, also present a potential security concerns because of the opportunity for gang-related activity. <u>The Plaintiff denies this as only an excuse to deny sex offenders to attend communal activities. The same</u>

-3-

screening process can be used just like general population to eliminate offender who aren't serious about attending religious services and deny those offenders who have history of violent behavior be denied religious services. Not every seg offenders.

10. Individual religious counseling is made available to inmates in segregation status on a weekly basis, and was available from December 2003 to May 2004. The Plaintiff denies this. The only weekly counseling is Chaplain who tours seg unit and only pass out religious material. He may give an brief (5 minute) counsel session but that is it, because he is always in hurry to get moving to next cellhouse. His individual counseling is deficient for an inmate who has alot of questions which he can't ask do to not getting adequate counseling time that is needed. Chaplain could pull each individual out per request slip or visit inmates who request counseling at their cells while in seg.

11. Additionally, Plaintiff was able to pray in his cell while in disciplinary segregation and had a access to religious materials. The Plaintiff states that some religious materials request took up to 2-4 weeks to get. It wasn't

-4-

always available when requested, like it is in General Population Services.

12. To be held liable under §1983, a Supervisor must have "caused or participated in the alleged violation." Boyce v. Moore, 314 F.3d 884, 888 (7th Cir. 2002). <u>The Plaintiff states this might be true because he doesn't get adequate access to law library to form an opinion on this.</u>

13. Defendants Howard and Vella were not personally involved in the alleged violation of Plaintiff's Constitutional rights as their roles were as members of the Prison Adjustment Committee. <u>The Plaintiff denies this due to fact he can't properly cross-examined these Defendant's to show how they are to be responsible for violation.</u>

14. To the extent Plaintiff seeks damages against Defendants in their official capacity such a claim is barred by the Eleventh Amendment. Seminole Tribe of Florida v. Florida 517 U.S. 44, 54-55 (1996). <u>The Plaintiff can't say for sure if this is true or not due to the fact he doesn't receive adequate access to law library. He also is being denied right to cross-examined the Defendants due to his inability to pay for such depositions</u>

-5-

to show how they are responsible for his 1st Amendment violation.

15. Defendant's are also shielded by the doctrine of qualified immunity as their conduct does not violate clearly established statutory or constitutional rights. Harlow v. Fitzgerald 457 U.S. 800 818(1982). The Plaintiff's response to this is the same as No. 14.

Wherefore for the above-listed reasons, the Plaintiff respectfully pray's that this Honorable Court to deny the defendant's motion for summary judgment appoint the Plaintiff counsel to cross-examined each person's involved in this case, and to give other relief as the Court deems equitable and Just.

Respectfully Submitted,

Keven L. Carter
Keven L. Carter #R25659
Plaintiff Pro Se.
Pinckneyville Correctional CTR
P.O. Box 999
Pinckneyville, IL, 62274
Telephone: _____
Date: November    2006

-6-

## Certificate of Service

I hereby certify that on <u>November/2, 2006</u>, I mailed an copy of "Plaintiff's Local Rule 56.1(b)(3) response" by United States Postal Service to the Defendant's Counsel as indicated below:

Lisa Madigan
Attorney General of State of Illinois
Attn. Carrie L. Kinsella, Asst. Atty. General
500 South Second Street
Springfield, IL. 62706

Respectfully Submitted,

*Keven L. Carter*

Keven L. Carter #R25659
Plaintiff, Pro Se.
Pinckneyville Correctional Ctr.
P.O. Box 999
Pinckneyville, IL. 62274
Telephone: _____

State of Illinois  )
                   ) SS
County of Perry    )

Carter v. Howard, et. al.,
USDC-CD 04-1157

## AFFIDAVIT

I, Keven L. Carter, inmate number R25659, having first duly affirmed, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1. I am currently imprisoned at Pinckneyville Correctional Center, in Pinckneyville, Illinois.

2. That between December 26, 2003 thru May 26, 2004 I was in segregation unit - West Cellhouse Cell #215 and #210.

3. That Chaplain Kennell toured West Cell House at least once per week and did stop and speak K.C. to me briefly on one occasion between December 26, 2003 thru May 26, 2004.

4. That between December 2003 - May 2004, I only received one, one on one counsel session that lasted 5 minutes K.C. with Chaplain Kennell because he was in a hurry to finish passing out his Salvation Army magazines.

5. That he did send me religious pamphlets through the institutional mail and on King James bible, but they (pamphlets) didn't help me because I have difficulty comprehending them when reading.

6. That between December 26, 2003 thru May 26, 2006, I only seen two other volunteers besides Chaplain Kennell who toured West Cell House Segregation Unit and those times were brief talks and a little prayer.

7. That the Segregation Hanbook that was given to me in April 2004 never mention the opportunity for one on one religious counseling, nor did it state when the Chaplain would tour West Cellhouse.

I have read the foregoing paragraphs and they are true and correct to the best of my knowledge and belief.

_Keven L. Carter_
AFFIANT

Subscribed and sworn to before me on _Nov 14, 2006_.
                              Date

_Donna Heideman_
Notary Public

"OFFICIAL SEAL"
Donna Heidemann
Notary Public, State of Illinois
My Commission Exp. 01/20/2008