IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

KEVEN L. CARTER, R25659      )
                             )
          Plaintiff,         )
                             )
     vs.                     )     No. 04-1157
                             )
ERIKA R. HOWARD, CLIFFORD VELLA,  )
RICHARD ALLEN, DOUGLAS CRAVENS,   )
ROGER E. WALKER JR.,         )
                             )
          Defendants.        )

**REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, ROGER E. WALKER JR., ERIKA HOWARD, JENNIFER MELVIN, and CLIFFORD VELA, by and through their attorney, Lisa Madigan, Attorney General of the State of Illinois, and hereby reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, stating as follows:

**REPLY TO PLAINTIFF'S ADDITIONAL MATERIAL FACTS**

1.      [Chaplain Kennell] offered [Plaintiff] a King James version Bible which was forwarded to [Plaintiff] but only confused [Plaintiff] more where [Plaintiff] became so frustrated [Plaintiff] gave up reading the Bible.

Reply: This fact is undisputed and material in part, and immaterial in part. To the extent Plaintiff avers he was given a King James Bible, this is material and undisputed. To the extent Plaintiff is asserting he was confused and frustrated, this is immaterial to the issue of whether Defendants violated Plaintiff's First Amendment rights.

2.      The seg unit was toured weekly, but volunteers were always in a hurry and only receive a brief (5 minute talk) which is insufficient for somebody who is trying to

understand the Bible.

<u>Reply</u>: This fact is undisputed and material in part, and immaterial in part.  Plaintiff's assertion that volunteers were available is material and undisputed.  To the extent Plaintiff asserts he was given insufficient time to understand the Bible, this is immaterial to the issue of whether Defendants violated Plaintiff's First Amendment rights.

3.  Plaintiff did not have the opportunity to depose Troy Quinley, who provided an affidavit in support of Defendants' Motion for Summary Judgment.

<u>Reply</u>: This fact is immaterial, as Plaintiff can provide his own evidence to oppose Troy Quinley's affidavit.

4.  Some kind of arrangement could be made like the way the exercise yard is ran at Pontiac Correctional Center where there is a group thing.

<u>Reply</u>: This fact is immaterial, as inmates retain only those rights consistent with prison discipline.  Defendants are not required to provide Plaintiff with every possible opportunity to practice his religion, particularly in circumstances where the institution has deemed there to be security concerns prohibiting such accommodations.

5.  Plaintiff received his copy of the notice of deposition on August 18, 2006, in the mail which only gave him 12 days to find counsel to assist him at his deposition.

<u>Reply</u>: This fact is immaterial, as Plaintiff is proceeding as a pro se litigant.

6.  Defendants' counsel was four hours late for said deposition and refused the Plaintiff's request to refuse the deposition on the grounds that Plaintiff could not obtain counsel.  The Defendants "forced" his deposition upon him without assistance of counsel without the Plaintiff voluntarily waiving said right and threatening him with sanctions if he didn't cooperate with the deposition on August 30, 2006.

Reply: This fact is immaterial, as Plaintiff is proceeding as a pro se litigant. Defendants' counsel was delayed due to car problems. To the extent Plaintiff is alleging Defendants' counsel "forced" his deposition upon him, to counsel's recollection, Plaintiff was asked if he was refusing to proceed with the deposition, and informed that Rule 37 provides for sanctions for a person's refusal to cooperate in discovery. Plaintiff then agreed to proceed with the deposition.

## ARGUMENT

While inmates retain First Amendment rights while incarcerated, those rights are not absolute; they maintain rights "consistent with prison discipline." Ustrak v. Fairman, 781 F.2d 573, 580 (7th Cir. 1986). Thus, prison restrictions that infringe upon an inmate's exercise of religion will be upheld if they are rationally related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987). The Seventh Circuit has recognized that prison officials "unquestionably have a legitimate interest in maintaining institutional security . . . ." Kaufman v. McCaughtry, 419 F.3d 678, 683 (7th Cir. 2005). Furthermore, to prevail in a First Amendment claim, the inmate "must first establish that his right to practice [his religion] was burdened in a significant way." Id.

It is undisputed that Plaintiff was in disciplinary segregation at Pontiac Correctional Center from December 26, 2003, to May 26, 2004, and that Plaintiff, along with all other inmates in disciplinary segregation, was not permitted to attend communal religious services. The issue before this Court is whether Plaintiff's inability to attend such services violated his First Amendment rights. Plaintiff must establish that his inability to attend communal religious services burdened his religious practice in a significant way;

3

Defendants must demonstrate legitimate penological interests in support of this practice. It is undisputed that Plaintiff was Plaintiff was able to pray in his cell and over his meals while in segregation status. Plaintiff admits he was able to have religious materials in his cell, and was able to read the Bible and religious publications including "The Daily Bread" and a daily prayer manual from the Gideons. (See Defendants' Motion for Summary Judgment, Undisputed Material Fact Nos. 19-20.) While Plaintiff disputes Defendants' assertions regarding the overall availability of Chaplain Kennell, Plaintiff acknowledges in his response that he did see Chaplain Kennell in the cellhouse, and had an opportunity to speak with him. (Plaintiff's Response at 3.) Plaintiff also admits that the seg unit was toured weekly by volunteers, but indicates that insufficient time was devoted by the volunteers for someone who is "trying to understand the Bible." (Plaintiff's Response at 3-4.) Thus, Plaintiff had other means of exercising his religious beliefs, even though it appears he was dissatisfied with the limited amount of time devoted to him by the Chaplain and other religious volunteers. Plaintiff has not met his burden of demonstrating that his right to practice his religion was affected in a significant way.

Plaintiff suggests in his response that Defendants could hold communal religious services for inmates in disciplinary segregation, as it would require only minimal staff and the institution could screen offenders with violent histories from attendance. However, the issue is not whether the institution could have taken additional affirmative steps in an attempt to accommodate Plaintiff's religious beliefs; it is whether the policy of not allowing inmates in disciplinary segregation to attend communal religious services violated Plaintiff's constitutional rights. Defendants have presented evidence in support of a legitimate

4

penological interest underlying the practice of not permitting inmates in disciplinary segregation to attend communal religious services. For the protection of staff and other offenders, and to prevent gang-related activity, the institution does not allow inmates with disciplinary problems (which include behavior such as assault, fighting, sexual misconduct, possession of contraband, and threats and intimidation) to congregate. (See Defendants' Motion for Summary Judgment, Undisputed Material Fact Nos. 11-13.)

Plaintiff does not dispute that he was in segregation for disciplinary reasons during the five months he was unable to attend communal religious services. Defendants have provided evidence of legitimate penological reasons for not allowing inmates in disciplinary segregation to attend communal religious services, including a need to maintain security and order at a maximum-security facility. (See Defendants' Motion for Summary Judgment, Undisputed Material Fact Nos. 10-13.) Plaintiff also does not dispute that he had other means of practicing his religious beliefs while in disciplinary segregation, such as reading religious materials and praying in his cell. There is no dispute that Plaintiff had contact with Chaplain Kennell and other religious volunteers while in disciplinary segregation. As Plaintiff had other means of exercising his religious beliefs, and Defendants have demonstrated legitimate penological reasons for not permitting inmates in disciplinary segregation to attend communal religious services, Defendants respectfully request this Honorable Court grant summary judgment in their favor.

Respectfully submitted,

ROGER E. WALKER JR., ERIKA HOWARD, JENNIFER MELVIN, and CLIFFORD VELA,

 Defendants,

LISA MADIGAN, Attorney General
State of Illinois,

 Attorney for Defendants,

 s/Carrie L. Kinsella
Carrie L. Kinsella, #6283318
Attorney for Defendants
Assistant Attorney General
500 South Second Street
Springfield, IL  62706
Telephone:  (217) 782-9059
Facsimile:  (217) 524-5091
ckinsella@atg.state.il.us

## CERTIFICATE OF SERVICE

      I hereby certify that on November 30, 2006, I electronically filed Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

None

and I hereby certify that on November 30, 2006, I mailed by United States Postal Service, the document to the following non-registered participant:

Kevin Carter, #R-25659
Pinckneyville Correctional Center
5835 State Route 154
PO Box 999
Pinckneyville, IL 62274

Respectfully submitted,
/s/Carrie L. Kinsella
Carrie L. Kinsella, #6283318
Attorney for Defendants
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Telephone: (217) 782-9059
Facsimile: (217) 524-5091
ckinsella@atg.state.il.us